IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

Glen E. R.,[1]

        Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civ. No. 1:18-cv-01141-CL

**OPINION AND ORDER**

---

MARK D. CLARKE, Magistrate Judge.

Plaintiff Glen R. ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration denying his claims for a period of disability,

disability insurance benefits, and supplemental security income under Titles II and XVI of the

Social Security Act. For the reasons provided below, the Commissioner's decision is

AFFIRMED.[2]

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

[2] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1).

## BACKGROUND

Plaintiff was born December 17, 1964. Tr. 64. He has completed one year of college and has training in auto mechanics as well as in heating and air conditioning. Tr. 241. He has past relevant work experience as a manager and a cook. Tr. 241. On January 21, 2014, Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning January 1, 1991, due to lower back problems. Tr. 15, 64, 71, 86. These claims were denied initially and on reconsideration. Tr. 15. A short hearing was held on December 6, 2016 before an Administrative Law Judge ("ALJ"). The ALJ continued the hearing so that Plaintiff could retain counsel, undergo a consulting examination, and gather more medical records. Tr. 59-60. An additional hearing was held on August 14, 2017. At the August 2017 hearing, Plaintiff amended his alleged onset date to December 17, 2015, the date of his 50th birthday. Tr. 15.

On August 28, 2017, the ALJ issued a decision finding Plaintiff not disabled under the Social Security Act. Tr. 15-23. On April 25, 2018, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff now appeals that final decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks

the following series of questions:

1.  Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a.  The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018. Plaintiff has not engaged in substantial gainful activity since December 17, 2015, the alleged onset date. Tr. 17.

2. Plaintiff has the following severe impairments: intervertebral lumbar disc disorder, chronic obstructive pulmonary disease (COPD), left rotator cuff tear, and cervical degenerative disc disease and herniation. Tr. 18.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18.

   a. Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he is limited to frequently perform all postural categories including stooping, crouching, kneeling, crawling, and climbing of ramps and stairs, but can only occasionally climb ladders or scaffolds; can perform only occasional overhead lifting with left upper extremity; and must avoid even moderate exposure to environmental irritants such as fumes, odors, dusts, and gasses. Tr. 18

4. Plaintiff is unable to perform any past relevant work. Tr. 21.

5. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 22.

Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations

of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review: (1) whether the ALJ failed to fully and fairly develop the record; and (2) whether the ALJ committed harmful error by failing to weigh the opinion of a consultative examiner.

## I. The ALJ fully and fairly developed the record.

In Social Security cases, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even where, as here, "the claimant is represented by counsel." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). A claimant, however, retains the burden of proving that he is disabled. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-460 (rejecting the argument that the ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant).

Here, the ALJ took several steps to ensure that the record was developed, including postponing the first hearing in order to obtain more records, ordering a consultative medical exam (Tr. 59-60), and obtaining verbal assurance from Plaintiff's attorney at the start of the second hearing that the record was complete (Tr. 38). However, Plaintiff contends that his hearing testimony revealed that the record was not complete, and the ALJ failed to fully and fairly develop the record for several reasons. Plf.'s Br. at 9-11 (#12).

First, Plaintiff testified at the second hearing that he once received an injection in his neck and argues that this testimony revealed that the record is incomplete because there are no treatment notes from any doctor establishing Plaintiff received an injection in his neck. Upon review of the hearing transcript and the record as a whole, the Court finds that this testimony did not trigger the ALJ's duty to further develop the record. At the hearing, Plaintiff testified that he had one cortisone shot in his neck, but that he "hadn't had any of that done either in a long time." Tr. 45. The ALJ asked Plaintiff when he started having problems with his neck, and he

responded, "[s]ome time last year is when they figured it out. When they gave me an MRI . . . ."
Tr. 40. Indeed, the record indicates that Plaintiff underwent an MRI of his cervical spine on
November 5, 2015. Tr. 446. If Plaintiff started receiving treatment for his neck pain in
November 2015, approximately one month prior to the alleged onset date of disability and
approximately one year and eight months prior to the hearing, then it does not seem likely that a
neck injection from "a long time" ago would be relevant to the disability determination. *See*
*Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (finding medical
opinions that predate the alleged onset date of disability are of limited relevance). If Plaintiff
meant for "a long time" ago to mean still after the alleged onset date, then Plaintiff was in the
best position to obtain those medical records and provide them to the ALJ. Plaintiff's testimony
about a neck injection from a long time ago was not enough to indicate to the ALJ that the record
was inadequate.

Second, Plaintiff testified at the hearing that he was not receiving much treatment for his
neck because "[t]here's not really anything they can do besides surgery, and I smoke so they
won't operate on me." Tr. 41. Plaintiff argues that this testimony also reveals that the record is
incomplete because there are no records from a doctor recommending spinal surgery, nor are
there records stating Plaintiff's only option is surgery. The Court does not agree. Medical
records from Plaintiff's primary treating doctor dated December 30, 2015 state, "Patient has seen
an orthopedist and he has recommended a treatment regime for Glen. However he will not
proceed until [Plaintiff] has quit smoking. Glen is also complaining of shoulder pain, and here
again the physician will not repair until he quits smoking." Tr. 381. Twelve days prior, on
December 18, 2015, Plaintiff was treated by an orthopedist for his neck pain, and the orthopedist
noted, "I discussed treatment options with the patient including activity modification, anti-

inflammatories, pain medications, injections, and surgical intervention." Tr. 398. These medical records are consistent with Plaintiff's statements at the hearing that he needs to quit smoking in order to have surgery. These medical records also indicate that the reason there are no records stating Plaintiff's only treatment option is surgery is because that assertion is incorrect. Plaintiff's treatment options actually included activity modification, anti-inflammatories, pain medications, and injections in addition to or in lieu of surgical intervention. *See* Tr. 398.

Third, Plaintiff argues that treatment notes show that Plaintiff was treated by an orthopedist, but only one treatment note from Dr. Cabalo is in the record. Tr. 396-97. However, Plaintiff does not explicitly assert that he saw Dr. Cabalo more than once. Moreover, treatment notes from Plaintiff's primary doctor state that the orthopedist will not repair his neck or shoulder unless he quits smoking and by the hearing date Plaintiff was still smoking "about half a pack" per day (Tr. 381, 46), which indicates that Plaintiff may not have seen Dr. Cabalo again after the initial visit. The Court concludes that the ALJ did not err in failing to request additional records from Dr. Cabalo because Plaintiff has pointed to no evidence indicating that other treatment notes from Dr. Cabalo actually exist or presented reasoning for why the ALJ should have known to order more records from Dr. Cabalo.

Similarly, there is a letter in the record from Dr. Nugent to Plaintiff's primary treating doctor explaining that Dr. Nugent had examined Plaintiff's shoulder and provided a Kenalog injection. Tr. 400. Plaintiff contends that the corresponding treatment notes from Dr. Nugent are missing from the record. Again, the record does not indicate that additional treatment notes from Dr. Nugent exist. Moreover, the letter in the record explains Dr. Nugent's impression and treatment of Plaintiff's shoulder in detail. If additional treatment notes do exist from this visit with Dr. Nugent, Plaintiff does not explain what further information the notes would provide that

the letter does not. The ALJ's duty to develop the record further is triggered only when there is

ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

evidence; it is not a duty to hunt down medical records that may or may not exist.

On this record, the Court concludes that the ALJ fulfilled her duty to fully and fairly

develop the record.

**II.      The ALJ did not commit harmful error by failing to discuss Dr. Steinbrenner's opinion.**

Plaintiff argues that the ALJ erred by not discussing or weighing the opinion of

consultative examiner, Dr. Steinbrenner. Dr. Steinbrenner examined Plaintiff on June 24, 2014,

and generated an opinion regarding Plaintiff's abilities. Tr. 327-28. Plaintiff correctly notes that

the ALJ did not mention this opinion in her assessment of Plaintiff's impairments. However, as

the Commissioner points out, this opinion predates the alleged onset of disability in December

2015. "Medical opinions that predate the alleged onset of disability are of limited relevance."

*Carmickle*, 533 F.3d at 1165; *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n. 1 (9th Cir.1988)

(concluding ALJ correctly rejected medical evidence because it predated the relevant time

period); *Ybarra v. Saul*, 2019 U.S. Dist. LEXIS 167235, at *12-13 (E.D. Cal. Sept. 27, 2019)

(concluding ALJ did not err in failing to mention or consider an opinion that predated the alleged

onset of disability); *Ingham v. Astrue*, 2010 U.S. Dist. LEXIS 45357, at *9 (C.D. Cal. May 10,

2010) (concluding "medical opinions of any physician, treating or examining, which predate the

alleged onset of disability are not considered substantial evidence") (citation omitted). The ALJ

therefore did not err in failing to mention Dr. Steinbrenner's opinion.

Plaintiff further argues that because the ALJ weighed other medical opinions that predate

the alleged onset date, then the ALJ must also weigh the opinion of Dr. Steinbrenner from the

same time period. However, Plaintiff cites to no authority that requires an ALJ to discuss all

evidence presented to her. In fact, the Ninth Circuit has consistently held that an ALJ is not required to discuss all evidence presented. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, an ALJ must explain only why "significant probative evidence had been rejected." *Id.* Briefly discussing the opinions of other doctors that predated the onset date did not require the ALJ to then discuss every opinion or medical record that predated the onset date. The rule remains that medical opinions that predate the alleged onset of disability are of limited relevance. Meaning, the ALJ has discretion to determine the relevance of medical sources that predate the alleged onset date.

Finally, even if the ALJ did err in failing to discuss Dr. Steinbrenner's opinion, the Court concludes that any error was harmless. At the time of Dr. Steinbrenner's consultative examination, Plaintiff was working as a cook for seven hours per day, four days per week. Tr. 328. Dr. Steinbrenner noted that no heavy lifting was involved in Plaintiff's work as a cook, but that "[Plaintiff] should be able to lift and carry 10 to 15 pounds." Tr. 328. Plaintiff argues that this opinion is inconsistent with the RFC, which designates that he can lift up to twenty pounds per the definition of light work. However, Dr. Steinbrenner's opinion that Plaintiff "should" be able to lift 10 to 15 pounds does not appear to be based on any objective tests and is contradicted by Plaintiff's own statements to other doctors and his hearing testimony. In January 2017, approximately two years and seven months after his appointment with Dr. Steinbrenner, Plaintiff told Dr. Henderson that he was limited to lifting 25 pounds. Tr. 336. When asked how much Plaintiff was able to lift at the hearing, Plaintiff testified, "With my left arm, maybe five pounds. The right hand, because I'm right-handed, I can probably lift 30 pounds. Well, now about 20 pounds." Tr. 44. This testimony is consistent with the RFC determination, which limits Plaintiff

to lifting twenty pounds with only occasional overhead lifting with the left upper extremity. Tr.

18.

For these reasons, the Court does not find reversable error on this record.

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED this ____ day of December, 2019.

_____
MARK D. CLARKE
United States Magistrate Judge